**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

TAMMY J. JONES,                     :

    Plaintiff,                    :

vs.                                 :        CA 07-0202-C

MICHAEL J. ASTRUE,                  :
Commissioner of Social Security,
                                    :
    Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 17 & 18 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case . . . and order the entry of a final judgment, and conduct all post-judgment proceedings.")) Upon consideration of the administrative record, plaintiff's proposed report and recommendation, the Commissioner's proposed report and recommendation, and the parties'

arguments at the October 31, 2007 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

The Administrative Law Judge (ALJ) made the following findings:

**2. The claimant has the following severe impairments: chronic obstructive pulmonary disease, substance abuse, right carpal tunnel syndrome, depression, obesity, post-traumatic stress disorder, and borderline intellectual functioning (20 CFR 416.920(c)).**

. . .

**3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**

. . .

**4. In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSRs 96-4p and 96-7p. The undersigned also considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p and 96-6p.**

. . .

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 17 & 18 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

> **5.  The claimant has no past relevant work (20 CFR 416.965).**
>
> **6.  The claimant was born on July 18, 1970 and was 34 years old on the date the application was filed, which is defined as a younger individual age 18-44 (20 CFR 416.963).**
>
> **7.  The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).**
>
> **8.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).**
>
> **9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).**
>
> .   .   .
>
> **10.  The claimant has not been under a "disability," as defined in the Social Security Act, since November 8, 2004 (20 CFR 416.920(g)), the date the application was filed.**

(Tr. 16, 17, 17-18, 18 & 19 (emphasis in original))  The Appeals Council affirmed the ALJ's decision (Tr. 4-6) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## **DISCUSSION**

In Social Security cases in which a determination is made that a claimant has never engaged in substantial gainful activity, as here (*see* Tr. 18), the Commissioner must bear the burden of proving that the claimant is capable

of performing work that exists in significant numbers in the national economy. *See Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989) (citation omitted). The ALJ's articulation of specific jobs the claimant is capable of performing must be supported by substantial evidence. *Id.* (citation omitted). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

In this case, plaintiff contends that the ALJ made the following errors: (1) he erred in failing to find that her impairments meet or medically equal a listed impairment; (2) he failed to develop the record regarding major depression in light of the fact that she was not represented at the administrative hearing; and (3) his finding that she can perform work in the national economy is inconsistent with the evidence and the vocational expert's testimony.

**A.** **Listing 12.04.** During the oral arguments in this case, plaintiff's counsel stated that in making the argument that the ALJ erred in finding Jones'

impairments do not meet or medically equal a listed impairment he was traveling under the affective disorder listing. This is Listing 12.04, which reads in relevant part as follows:

> Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>
> 1. Depressive syndrome characterized by at least four of the following:
>
>     a. Anhedonia or pervasive loss of interest in almost all activities; or
>
>     b. Appetite disturbance with change in weight; or
>
>     c. Sleep disturbance; or
>
>     d. Psychomotor agitation or retardation; or
>
>     e. Decreased energy; or
>
>     f. Feelings of guilt or worthlessness; or
>
>     g. Difficulty concentrating or thinking; or
>
>     h. Thoughts of suicide; or

>    i. Hallucinations, delusions, or paranoid thinking[.]
>
>    . . .
>
> AND
>
>    B. Resulting in at least two of the following:
>
>    1. Marked restriction of activities of daily living; or
>
>    2. Marked difficulties in maintaining social functioning; or
>
>    3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
>    4. Repeated episodes of decompensation, each of extended durarion[.]

*Id*.

In this circuit, Jones must bear the burden of proving that she has an impairment which meets or is medically equivalent to a listed impairment. *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986) ("We hold that when a claimant contends that he has an impairment meeting the listed impairments entitling him to an adjudication of disability under regulation 404.1520(d), he must present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how

the impairment has such an equivalency."); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) ("To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. . . . To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'").

In this case, while the ALJ did not specifically address Listing 12.04 he did find that "**[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]**" (Tr. 17 (emphasis in original)) Even if this Court accepts the argument that plaintiff's depressive syndrome is attended by four of the nine symptoms listed in 12.04A.1., there is no support in the record that the "B" criteria of 12.04 have been met. In fact, the evidence of record establishes at most a mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence and pace. (*Compare* Tr. 143 *with* Tr. 173)[2] Accordingly, the Court finds substantial support in the record for the ALJ's determination that plaintiff

---

[2] There is no evidence of repeated episodes of decompensation. (Tr. 143)

does not have an impairment or combination of impairments that meets or is medically equal to a listed impairment.

**B.     Failure to Develop the Record.**  Plaintiff contends that the ALJ failed to develop the record in relation to the diagnosis of major depression. In particular, it is counsel's argument that it was incumbent upon the ALJ to develop the symptoms attendant to plaintiff's depression during the administrative hearing given that Jones was not represented by counsel. The Court disagrees.

The transcript of the administrative hearing reflects that plaintiff was afforded a full opportunity to describe the sources of her disability.

> Q     Okay. And ma'am would you tell us a little bit about your disability? What are some of the problems you're having now to keep you from being able to work.
>
> A     Yes, sir. I have, well sir, if I could just speak blunt. I had, I would just like to tell you that when I was eight years old, my uncle raped me. And then from the time I was 12 until 15 my stepfather sexually abused me. And he got me pregnant with my oldest daughter. And then three and [a] half years ago, I was kidnaped and very brutally raped and abused.
>
> .     .     .
>
> Q     Okay. Now one of the doctors seem[ed] to think that you had some problems with your breathing. Do you have a breathing problem?
>
> A     I have panic attacks. I guess that's maybe what

they [were] talking about.

      Q      Okay. One of the doctors said that in the past you used cocaine. Did that help at all when you were using cocaine?

      A      No, sir. I'm sure it didn't help.

. . .

      Q      Okay. Another doctor said that in the past that you had had some experience with methamphetamines?

      A      Yes, sir.

      Q      Do you . . . use that from time to time to try to make yourself feel better?

      A      I did. But I realize now [] that's the wrong thing to do.

      Q      Okay. Now, ma'am, do you go to see a doctor at all?

      A      Yes, sir. I go . . . every month to Southwest Alabama Mental Health. Actually, I go every three weeks to see my counselor. And then I see my doctor there every month. I see my medical doctor, [] Dr. Yearwood[,] . . . every month.

      Q      Okay. And what does Dr. Yearwood try[] to help you with?

      A      I have arthritis and just my nerves. She helps . . . [with] sleep problems and stuff like that. []

      Q      Okay. Now, ma'am, do you take any medicines these days?

      A      Yes, sir.

Q      Okay. And [] what do you take it for?

A      I take Zoloft, 100 milligram[s]. I take 100 milligrams of Seroquel. And I take five milligrams of Zanax. . . . I also take 25 milligrams of Mobic for my arthritis. Also take the pain medication.

. . .

Q      Okay. Well, what would you say is your worse problem at this point?

A      I just, I felt (sic) like I'm in danger all the time. And, you know, I was (sic) just be honest, I can't even stand to go in a grocery store, because I feel like . . . everybody's after me that's in there. I start panicking and I just lose control, you know. And, also I can't sleep at night. I have terrible, terrible flashbacks. And, I scratch myself and hurt myself, and I don't even realize I've done it. And, I take all this medication[] and then when I actually do go to sleep, then I'm very distraught and I don't really know what's going on. And, I can't really focus, you know, to do anything.

Q      Do you feel better when you go to the Holiness Church in Paul?

A      I haven't been in quite a while, sir.

. . .

Q      Okay. Now, do you think that your children's friends are nice kids? Do you like your [] children's friends?

A      No. I don't.

Q      Do they threaten you or make you feel uncomfortable**?**

> A      They make me feel uncomfortable, yes, sir. I fear for my girls. I'm scared that they [are] going to get hurt like I was. And, I try my best to keep them with me all the time.
>
> . . .
>
> Q      Now, ma'am, [] you're going to see doctors from time to time and counselors to help you with your problems. Do you think you get any better when you go to see them?
>
> A      [] I haven't told that I've gotten any better. . . . I guess I have some, but not much.
>
> Q      Is there any kind of program they suggested for you that you're thinking about entering?
>
> A      I, not as far as I know. They thought one time they may have to hospitalize [me] in like a mental facility because I was . . . attempting suicide.
>
> . . .
>
> Q      Okay. Now, ma'am, have you had to spend the night in a hospital anytime in the last couple of years?
>
> A      I did spend a night in a hospital. . . .
>
> Q      What was the problem?
>
> A      I had tried to kill myself.
>
> Q      Okay. And do you remember when that was?
>
> A      I'm not sure on the dates, no, sir. . . . It was like about . . . three years ago.
>
> Q      Okay. Was that back when you were using the

>    drugs?
>
>                       .   .   .
>
>    A     I'm sorry. . . . [I]t was after I was using drugs. But
>    it was before I cam back home. . . . It all happened pretty quick.
>    [] I had got mixed in with a crowd of people, and I had started
>    using the drugs. And I thought, gee, you know, this helps me
>    with my problems a lot, you know. And then I just ran off with
>    a bunch of people. And I left my family. And that's when all this
>    last rape occurrence and everything took place. And, then I
>    realized how stupid I had been. So I attempted to jump off a
>    bridge. And the police came and got me, called an ambulance.
>    And they took me to the hospital and they give me medications
>    and everything and then they released me to go back home. And
>    I came back home to my family.

(Tr. 183-185, 186-187, 187-188 & 189-190) This is significant testimony which, in truth, runs contrary to the implicit argument of plaintiff's counsel that his client's testimony was not in any manner reflective of how her depression affects her. This Court finds that when plaintiff's testimony is combined with the medical evidence of evidence of record,[3] the ALJ had a gracious amount of evidence from which to make a decision regarding the affects of plaintiff's depression at all steps of the sequential evaluation process. The Court finds that the ALJ fulfilled his duty to develop the record in this case. *See Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) ("Here, the

---

[3] It must be noted that the ALJ referred plaintiff to two different psychologists for mental examination. (*See* Tr. 106-109 & 166-173)

record as a whole is neither incomplete nor inadequate. Instead, the record was sufficient for the ALJ to evaluate Graham's impairments and functional ability, and does not show the kind of gaps in the evidence necessary to demonstrate prejudice.").

**C.    Other Work.**  Plaintiff's final argument is that the ALJ's determination that she is capable of performing work existing in significant numbers in the national economy is inconsistent with the medical evidence and the vocational expert's testimony. More specifically, the argument is made that with respect to two of the three hypotheticals posed to the VE the expert testified that there would be no work available and it is only when the ALJ removed all issues related to her depression and post-traumatic stress disorder that the VE identified work that she could perform.

It is clear in this circuit that the Commissioner of Social Security must develop "a full and fair record regarding the vocational opportunities available to a claimant." *Allen, supra*, 880 F.2d at 1201(citation omitted). The Commissioner must articulate specific jobs that the claimant can perform given her age, education and work history, if any, "and this finding must be supported by substantial evidence, not mere intuition or conjecture." *See id.* (citation omitted)  The means by which the Commissioner meets this burden

include use of the grids and reliance upon vocational expert testimony. *See id.* at 1201-1202. In this case, the ALJ relied upon the testimony of a vocational expert to meet his fifth-step burden.

While this Court recognizes that the VE could identify no jobs plaintiff could perform in response to two of the hypotheticals posed by the ALJ, it cannot agree that the second hypothetical posed to the VE removed all issues related to plaintiff's depression and post-traumatic stress disorder. Instead, this Court finds that the second hypothetical posed to the VE, to which the expert identified several jobs, encompassed information about plaintiff's depression and post-traumatic stress disorder and is supported by substantial evidence of record.

> I'd like you to assume a person who is 35-years-old, who has a GED, and for purposes of this first hypothetical, I'd like you to assume that [] she has no past relevant work. Then I would like you to assume that from a physical perspective, she would be limited to the light exertional level. And, I'd like you to assume that she would not be able to engage in the climbing of ladders, ropes, or scaffolds. And I'd also like you to assume that she would need to avoid all but occasional exposure to dust, fumes and gases. I'd like you to assume further that she could not use her right upper extremity in a repetitive way. That is, she would be able to use it for all functions on an occasional basis, but would not be able to use it on a frequent basis. Her left upper extremity would be unlimited. Then I'd like you to assume that she would be limited to unskilled work with only occasional interaction with the general public and occasional changes in the work setting.

. . .

>   So, the limitations of the second hypothetical factor would be the same as the first hypothetical, with the exception of the absentee factor.[4] Now, if that were an accurate portrayal of the claimant's limitations, would you be able to identify any jobs in the national economy that she could perform?
>
>   A   Yes. There would be some jobs. . . . As in the job section, surveillance monitor. And there (sic) would be sedentary and unskilled.
>
>   Q   You know how many of those exist[] in the national economy?
>
>   A   Well, there's approximately 143,000. . . . And the same . . . cleaner housekeeper. . . . And even though the use of the arm . . . that job there's approximately 470,000 in [the] national economy. . . . There also [would] be jobs such as attendant . . . . I'll give you parking lot attendant. And in the national economy there's approximately 109,900.

(Tr. 192 & 193-194; *see also* Tr. 196 (VE's testimony that the identified jobs exist in Alabama)) The evidence of record from the two consultative psychologists and the non-examining physicians supports the ALJ's hypothetical assumptions that plaintiff's mental impairments, two of which are depression and post-traumatic stress disorder, necessitate unskilled work with

---

[4]   The VE's testimony is clear that she was unable to identify any jobs in response to the first hypothetical primarily because of the absentee rate. (*See* Tr. 193) There is simply no evidence in the record, much less substantial evidence, which supports the hypothetical assumption that plaintiff has ever had (since she has had no past relevant work) or would ever have an absentee rate of forty percent. (*See* Tr. 74-145 & 148-173)

only occasional interaction with the general public and occasional changes in the work setting. (Tr. 131; *see also* Tr. 173 ("Would do best in a low stress job environment with few workers & an understanding supervisor."); *see* Tr. 109 ("It is my opinion this lady can understand, carry out, remember instructions and again can respond to supervision. She obviously can handle work pressures from an intellectual perspective. She needs some psychological counseling and therapy to help her with her PTSD type problems from her rape and she may need some pain management as well."))[5] Because the VE identified several light and/or sedentary jobs which exist in significant

---

[5] There is nothing contained in the records from Southwest Alabama Mental Health which would indicate the presence of any mental limitations over and above those contained in the second hypothetical posed to the VE. (*See* Tr. 110-120, 124-128, 148-164 & 176) More to the point, there is nothing in the record, other than perhaps plaintiff's own testimony, which supports the hypothetical assumption contained in the third hypothetical posed to the VE that plaintiff would have a panic attack at least twice a week which would cause her to leave her work station for two hour periods at unexpected times. (*Compare* Tr. 184 & 187 (plaintiff's testimony that she has panic attacks and panics in public places) *with* Tr. 106-120, 128, 148-173 (only one report of being panicked; no reports of panic attacks which last for prolonged periods of time)) Because the medical evidence of record does not support the assumption that plaintiff could be expected to have at least two panic attacks a week of some two hours in duration, and the ALJ properly rejected plaintiff's testimony in this regard (Tr. 18 ("Her testimony indicates panic attacks related to her PTSD. However, the medical record shows that the claimant is able to interact socially, respond appropriately to work stresses, and deal with supervisors. Furthermore, her credibility was undermined by her exaggerating during a consultative mental examination, by the dearth of treatment sought and conservative treatment received during the time in question, by a wide range of activities of daily living, and by the paucity of medical findings based on medically acceptable clinical or laboratory diagnostic techniques.")), the ALJ did not err in basing his finding of non-disability on the VE's response to the second hypothetical.

numbers that plaintiff is capable of performing in light of her impairments and limitations, the ALJ's fifth-step denial of benefits is due to be affirmed.

## CONCLUSION

In consideration of the foregoing, the Court **ORDERS** that the Commissioner's decision denying plaintiff benefits be affirmed.

**DONE** this the 9th day of November, 2007.

        s/WILLIAM E. CASSADY
        **UNITED STATES MAGISTRATE JUDGE**